UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

LEONARD PIAZZA, III,               :
                                   :CIVIL ACTION NO. 3:13-CV-1755
          Plaintiff,               :
                                   :(JUDGE CONABOY)
          v.                       :
                                   :
COUNTY OF LUZERNE and              :
ROBERT LAWTON,                     :
                                   :
          Defendants.              :
                                   :

---

## MEMORANADUM

   Here we consider Defendants Luzerne County and Robert Lawton's
Motion to Dismiss (Doc. 15) with which Defendants seek to dismiss
Plaintiff's First Amended Complaint (Doc. 11).  The incident
underlying Plaintiff's 42 U.S.C. § 1983 action is his termination
from his position as Luzerne County Director of Elections, Chief
Registrar and Clerk on April 10, 2013.  (Doc. 11 ¶¶ 10, 58-59.)
For the reasons discussed below, we conclude Defendants' motion is
properly granted in part and denied in part.

## I. Background[1]

   Beginning in April 2004, Plaintiff held the position of the
Director of Elections, Chief Registrar and Clerk in Luzerne County,
Pennsylvania.  (Doc. 11 ¶ 10.)  He had previously served as the

---

   [1] The factual background is derived from Plaintiff's First
Amended Complaint (Doc. 11) and brief opposing Defendants' motion
(Doc. 19).  *Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d
Cir. 2008) (Courts are to "accept all factual allegations as true,
construe the complaint in the light most favorable to the
plaintiff, and determine, under any reasonable reading of the
complaint, the plaintiff may be entitled to relief.")

Deputy Director of Elections beginning in August 2002.  (Doc. 11 ¶ 11.)

On April 5, 2012, Plaintiff was called to the office of Robert Lawton, the County Manager for Luzerne County. (Doc. 11 ¶¶ 7, 50.) Plaintiff was accused of violating the civil rights of Walter L. Griffith, Jr., who was the Luzerne County Controller at the time, having been elected in November 2009.  (Doc. 11 ¶¶ 40, 42, 51.)

Approximately one week before the meeting, on March 30, 2012, Plaintiff had requested certain campaign finance information from Griffith and the Committee to Elect Walter L. Griffith (Controller) for purposes of examination.  (Doc. 11 ¶ 46.)  The written request specifically identified that it was being made consistent with Section 1639 of the Pennsylvania Election Code, 25 P.S. § 3259. (*Id.*)  At the same time, Plaintiff sent the Griffith request by e-mail to the Luzerne County Board of Elections and Registration and Michael I. Butera, Esq., solicitor to the Luzerne County Board of Elections and Registration.  (Doc. 11 ¶ 47.)

Griffith had run for other elective offices prior to his election as a Luzerne County Controller in 2009.  (Doc. 11 ¶ 43.) In the course of various campaigns, Griffith "had been non-compliant with Pennsylvania Campaign Finance Laws pursuant to the Pennsylvania Election Code by late filings, missing information from reports, and failure to follow reporting instructions."  (Doc. 11 ¶ 43.)

On March 31, 2012, Plaintiff requested certain campaign finance information from the First District Democratic Committee, Political Party Committee, addressed to Joseph A. Zoba for purposes of an examination.  (Doc. 11 ¶ 48.)  The written request specifically identified that it was being made consistent with Section 1639 of the Pennsylvania Election Code, 25 P.S. § 3259. (*Id.*)

On March 31, 2012, Griffith notified Plaintiff that he would not comply with Plaintiff's request for information.  (Doc. 11 ¶ 49.)  Griffith contemporaneously informed Defendant Lawton, Luzerne County Solicitor Vito DeLuca, Assistant Luzerne County Solicitor "(and putative solicitor to the Luzerne County Board of Elections)," Michael Butera, Esq.  (Doc. 11 ¶ 49.)

Attorneys Butera and DeLuca were present at the April 5, 2012, meeting in Defendant Lawton's office, as was Luzerne County Human Resources Manager Andrew Check.  (Doc. 11 at 50.)  Aside from the accusation that Plaintiff had violated Controller Griffith's civil rights, no other matters pertaining to Plaintiff were raised at the meeting.  (Doc. 11 ¶ 54.)  At the direction of Defendant Lawton on behalf of Defendant Luzerne County, Check informed Plaintiff that he was being placed on administrative leave.  (Doc. 11 ¶ 55.)

Plaintiff was terminated from his employment on April 10, 2012, for the reasons communicated to him at the April 5th meeting. (Doc. 11 ¶ 58.)  The Luzerne County Board of Elections was not

consulted about Plaintiff's status or performance, nor was it consulted regarding his placement on administrative leave and termination.  (Doc. 11 ¶¶ 57, 60, 61.)  Before the April 5th meeting, Defendants had not criticized Plaintiff's performance of his duties.  (Doc. 11 ¶ 66.)

The Luzerne County Board of Elections "was, and is, empowered to 'Make from time to time inquiries and field investigations with respect to reports and statements filed under [the Election Code] and with respect to alleged failures to file any report or statement required under the provisions of [the Election Code].'" (Doc. 11 ¶ 36 (quoting 25 P.S. § 3259).)  Before January 1, 2012, Plaintiff did make such inquiries in the course of his duties as Director of Elections.  (Doc. 11 ¶ 38.)  The inquiries and field investigations Plaintiff performed before January 1, 2012, were done with the knowledge and consent of the Luzerne County Board of Elections in furtherance of the statutory duties to assure that candidates and campaign committees complied with the Pennsylvania Election Code.  (Doc. 11 ¶ 39.)

Plaintiff had no political affiliation with any candidate or office holder.  (Doc. 11 ¶ 53.)  Defendant Lawton was politically affiliated with Controller Griffith.  (Doc. 11 ¶ 51.)

Plaintiff's successor, Maria Crispell, has failed to perform the duties of the Director of Elections in numerous ways.  (Doc. 11 § 67 (identifying eight (8) examples).)  Defendants have taken no

disciplinary or employment action against her.  (Doc. 11 ¶ 68.)   On
June 13, 2013, David Pedri, Esq., Luzerne County Solicitor (who
replaced Attorney DeLuca), stated at a news conference regarding
errors made by Crispell during the 2013 primary elections that any
disciplinary action to be taken against her "'was more for the
board of elections at this time.'"  (Doc. 11 ¶ 70.)

Plaintiff filed a Complaint in this Court on June 25, 2013.
(Doc. 1.)  Defendants filed Defendants Luzerne County and Robert
Lawton's Motion to Dismiss (Doc. 5) on August 29, 2013.   Plaintiff
filed the First Amended Complaint (Doc. 11) on September 23, 2013.
The First Amended Complaint contains six counts: Count I 42 U.S.C.
§ 1983 Association claim pursuant to the First and Fourteenth
Amendments of the United States Constitution against both
Defendants; Count II 42 U.S.C. § 1983 Equal Protection claim
pursuant to the First and Fourteenth Amendments of the United
States Constitution against both Defendants; Count III Association
claim pursuant to the Constitution of the Commonwealth of
Pennsylvania against Defendant Luzerne County; Count IV Equal
Protection claim pursuant to the Constitution of the Commonwealth
of Pennsylvania against Defendant Luzerne County; Count V Wrongful
Termination claim pursuant to the Constitution of the Commonwealth
of Pennsylvania against Defendant Luzerne County; Count VI Wrongful
Termination claim pursuant to Pennsylvania statutes and common law.
(Doc. 11; Doc. 19 at 10.)

Defendants filed the motion at issue here, Defendants Luzerne County and Robert Lawton's Motion to Dismiss (Doc. 15), on October 15, 2013. Defendants filed their supporting brief (Doc. 18) on October 28, 2013, and Plaintiff filed his opposition brief (Doc. 19) on November 14, 2013. Defendants filed their reply brief (Doc. 21) on December 2, 2013. Plaintiff filed a sur-reply brief (Doc. 24) on December 20, 2013, after receiving leave of court to do so (Doc. 23). Therefore, this matter is fully briefed and ripe for disposition.

## II. Discussion

### A.   *Motion to Dismiss Standard*

In a motion to dismiss for failure to state a claim, the defendant bears the burden of showing that no claim has been presented. *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (citing *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991)). Courts are directed to "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008). When reviewing a complaint pursuant to a defendant's motion to dismiss for failure to state a claim filed under Federal Rule of Civil Procedure 12(b)(6), the court does so in the context of the requirement of Federal Rule of Civil Procedure 8(a)(2) which

6

requires only "a short and plain statement of the claims showing that the pleader is entitled to relief." The "short and plain statement" must be sufficient to "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957), *abrogated on other grounds by Bell Atlantic Corp. v. Twombly*, 550 U.S. 433 (2007). *Twombly* confirmed that more is required than "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." 550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986) (on a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation")). "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all allegations in the complaint are true (even if doubtful in fact)." 550 U.S. at 555 (citations omitted).

In *McTernan v. City of York*, 577 F.3d 521, 530 (3d Cir. 2009), the Third Circuit Court of Appeals set out the standard applicable to a motion to dismiss in light of the United States Supreme Court's decisions in *Twombly*, 550 U.S. 433 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937 (2009).

> "[T]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true to 'state a claim that relief is plausible on its face.'" *Iqbal*, 129 S.Ct. at 1949 (citing *Twombly*, 550 U.S. at 570). The Court emphasized that "only a complaint that states a plausible

> claim for relief survives a motion to
> dismiss." *Id.* at 1950.

*McTernan,* 577 F.3d at 530.  *Iqbal* explained that "[a] claim has

facial plausibility when the plaintiff pleads factual content that

allows the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S.

at 678.

McTernan discussed the effects of *Twombly* and *Iqbal* in detail

and provided a road map for district courts presented with a motion

to dismiss for failure to state a claim in a case filed just a week

before *McTernan*, *Fowler v. UPMC Shadyside*, 578 F.3d 203 (3d Cir.

2009).

> [D]istrict courts should conduct a two-part
> analysis.  First, the factual and legal
> elements of a claim should be separated.  The
> District Court must accept all of the
> complaint's well-pleaded facts as true, but
> may disregard any legal conclusions. [*Iqbal*,
> 129 S. Ct. at 1949.]  Second, a District
> Court must then determine whether the facts
> alleged in the complaint are sufficient to
> show that the plaintiff has a "plausible
> claim for relief." *Id.* at 1950.  In other
> words, a complaint must do more than allege a
> plaintiff's entitlement to relief.  A
> complaint has to "show" such an entitlement
> with its facts. *See Philips* [*v. Co. of
> Alleghany*], 515 F.3d [224,] 234-35 [(3d
> Cir.2008 )].  As the Supreme Court instructed
> in *Iqbal*, "[w]here the well-pleaded facts do
> not permit the court to infer more than the
> mere possibility of misconduct, the complaint
> has alleged--but it has not 'show[n]'--'that
> the pleader is entitled to relief.'" *Iqbal*,
> 129 S. Ct. at 1949.  This "plausibility"
> determination will be "a context-specific

8

> task that requires the reviewing court to
> draw on its judicial experience and common
> sense." *Id.*

*Fowler*, 578 F.3d at 210-11.

The Circuit Court's guidance makes clear that legal conclusions are not entitled to the same deference as well-pled facts. As noted above, "the court is 'not bound to accept as true a legal conclusion couched as a factual allegation.'" *Guirguis v. Movers Specialty Services, Inc.*, No. 09-1104, 2009 WL 3041992, at *2 (3d Cir. Sept. 24, 2009) (quoting *Twombly*, 550 U.S. at 555) (not precedential).

Finally, the district court must extend the plaintiff an opportunity to amend before dismissing a complaint unless amendment would be inequitable or futile. *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002).

**B.    *Defendants' Motion***

**1.    <u>42 U.S.C. § 1983 Association Claim</u>**

Defendants first assert Plaintiff's First and Fourteenth Amendment right of association claim must be dismissed because the activities Plaintiff alleges he engaged in were part of his employment duties which are not protected. (Doc. 18 at 4-7.)  We conclude Defendants have not met their burden of showing that Plaintiff cannot prevail on this claim.

Defendants portray the activities as "Plaintiff's inquiries and investigations into Controller Griffith, 'performed in the

course of [Plaintiff's] duties as Director of Elections,' and done 'consistent with Section 1639 of the Pennsylvania Code, 25 P.S. §3259.'" (Doc. 18 at 6 (citing Doc. 11 ¶¶ 39-48).)   Plaintiff avers that he was terminated after he engaged in the activities identified by Defendants.  (Doc. 11 ¶¶ 46-59.)  He states he was terminated because of his "lack of political affiliation with Mr. Griffith and his failure to forbear from performing his statutory duties with regard to Mr. Griffith as a political candidate." (Doc. 11 ¶ 71.)  Plaintiff identifies the constitutionally protected conduct as "declining to give allegiance to public officials, political parties, and political factions in power in the County of Luzerne, and, in particular, to Mr. Griffith."  (Doc. 11 ¶ 72.)   Although Defendants recognize this averment (Doc. 18 at 4), their analysis focuses only on the performance of Plaintiff's activities related to Controller Griffith.  (Doc. 18 at 4-7; Doc. 21 at 1-7.)

In *Galli v. New Jersey Meadowlands Commission*, 490 F.3d 265 (3d Cir. 20007), our Circuit Court reviewed Supreme Court and Third Circuit precedent and concluded that "a public employee, not in a policymaking position, may not be fired for failing to support the political party or candidate in power."  490 F.3d at 274.  In *Galli*, the plaintiff presented some evidence that she did not support the Democratic party or governor and the Court concluded "[w]hether her failure to support is evidenced by a decision to

support a competing candidate or party, or by a decision to be apolitical and support no candidate or party, it is constitutionally protected." *Id.*

Here, Defendant does not accurately portray or analyze the conduct alleged to be protected. Plaintiff's claim that he declined to give allegiance to officials, parties, or political factions in power (Doc. 11 ¶ 72) is within the *Galli* description of constitutionally protected conduct.

This type of First Amendment political discrimination claim is analyzed using a three-part test. Galli, 490 F.3d at 271; see also Montone v. City of Jersey City, 709 F.3d 181, 189 (3d Cir. 2013. To make out a prima facie case, a plaintiff must show the following: 1) he was employed at a public agency in a position that does not require political affiliation; 2) he was engaged in constitutionally protected conduct; and 3) this conduct was a substantial or motivating factor in the government's employment decision. *Galli*, 490 F.3d at 271 (citation omitted). Once a plaintiff makes this showing, a defendant "may avoid a finding of liability by proving by a preponderance of the evidence that the same employment action would have been taken even in the absence of the protected activity." *Id.* (citing *Stephens v. Kerrigan*, 122 F.3d 171, 176 (3d Cir. 1997); *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

Defendants do not address Plaintiff's 42 U.S.C. § 1983

association claim within this legal framework.  However, in the course of their argument, Defendants address the second prong of the three-part test, and, as noted above, incorrectly identify the protected conduct.  Defendants make no argument that Plaintiff's decision not to give allegiance to officials, parties, or political factions in power is not protected.  (Doc. 11 ¶ 72.)  Thus, Defendants' motion to dismiss Plaintiff's 42 U.S.C. § 1983 association claim must be denied.

**2.  42 U.S.C. § 1983 Equal Protection Claim**

Defendants next argue that Plaintiff's 42 U.S.C. § 1983 Equal Protection Claim must be dismissed because he cannot satisfy the requirements of such a claim on any basis recognized.  (Doc. 18 at 7-12.)  We conclude Defendants have not met their burden of showing that Plaintiff cannot prevail on this claim.

Under the Fourteenth Amendment, no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1.  The Supreme Court has stated that this is "essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne, Tex. v. Cleburne Living Center*, 473 U.S. 432, 439 (1985) (citing *Plyler v. Doe*, 457 U.S. 202, 216 (1982)).  To state a § 1983 claim based on a violation of the Equal Protection Clause, a plaintiff "must allege that he has been treated differently because of his membership in a suspect class or his exercise of a fundamental right, or that he

has been treated differently from similarly-situated others and that this different treatment was not rationally related to a legitimate state interest." *Young v. New Sewickly Township*, 160 F. App'x 263, 266 (3d Cir. 2005) (not precedential) (citing *City of Cleburne*, 473 U.S. 432). Our Circuit Court has explained that "an equal protection claim can be made out even absent membership in a protected group based on a disparate treatment of a 'class of one.'" *Kasper v. County of Bucks*, 514 F. App'x 210, 215 n.3 (3d Cir. 2013) (not precedential) (citing *Village of Willowbrook v. Olech*, 528 U.S. 562, 565 (2000)). *Kasper* also notes that "the Supreme Court has qualified that 'the class-of-one theory of equal protection has no application in the public employment context.'" *Id.* (quoting *Engquist v. Oregon Dep't of Agriculture*, 553 U.S. 591, 607 (2008)).

Defendants maintain that Plaintiff has not asserted he is a member of a suspect class and any claim based on the exercise of a fundamental right must fail because his First Amendment Association claim fails. (Doc. 18 at 8-9.) Defendants also argue that Plaintiff cannot prevail on a "class of one" theory because this type of action cannot be brought in an employment context. (Doc. 18 at 10 (citing *Engquist v. Oregon Dep't of Agriculture*, 553 U.S. 591, 605 (2008)).

We agree Plaintiff has not asserted that he is a member of a suspect class. However, based on our analysis of Plaintiff's First

13

Amendment association claim and finding that dismissal of this claim is not appropriate, Plaintiff's equal protection claim does not fail on the ground that his First Amendment association claim fails.

Plaintiff maintains that his equal protection claim may also proceed because he is a "member of the class of persons not politically affiliated with Mr. Griffith." (Doc. 19 at 19.) Defendants respond that such a claim would be subject to dismissal because it would be subject to rational review and Plaintiff did not aver facts sufficient to overcome the presumption of rationality that applies to this type of class. (Doc. 21 at 8 (citing *Brace v. County of Luzerne*, 873 F. Supp. 2d 616, 630 (M.D. Pa. 2012); *Cradle of Liberty Council, Inc. v. City of Phila.*, No. 08-2429, 2008 WL 4399025, at *6-7 (E.D. Pa. Sept. 25, 2008); *Flying J Inc. v. City of New Haven*, 549 F.3d 538, 546 (7th Cir. 2008)).) Defendants argue that, on the contrary, Plaintiff has set out the rational basis for Defendant's decision: "Plaintiff alleges Defendants terminated him because of their accusation that he was violating the civil rights of Mr. Griffith." (Doc. 21 at 10 (citing Doc. 11 ¶¶ 51, 58.) With this argument, Defendants inferentially appear to accept that the class identified by Plaintiff and allegations of disparate treatment by government officials on the basis of memberhsip in that class which lack a rational basis may provide the grounds for an equal protection

claim.

"[A] classification neither involving fundamental rights nor proceeding along suspect lines is accorded a strong presumption of validity. . . . Such a classification cannot run afoul of the Equal Protection Clause if there is a rational relationship between the disparity of treatment and some legitimate governmental interest." *Heller v. Doe by Doe*, 509 U.S. 312, 320 (1993) (citations omitted).

Plaintiff avers that he was acting in accordance with his statutory duties when Defendants terminated him for violating Griffith's constitutional rights and they did so because he did not support Defendant Lawton and Controller Griffith, i.e., he was a` member of a class of persons not politically affiliated with Controller Griffith.  (Doc. 19 at 19-20.)

Assuming this to be true for purposes of Defendants' motion to dismiss, the proper inquiry is whether there was some legitimate governmental interest in treating persons not affiliated with Controller Griffith differently from those who were.  Defendants do not address this aspect of Plaintiff's equal protection claim. Therefore, dismissal of the claim is inappropriate on this basis as well.

**3.   Wrongful Termination**

Defendants argue that Plaintiff's Wrongful Termination claim must be dismissed because it is barred by the Political Subdivision Tort Claims Act.  We agree.

The Political Subdivision Tort Claims Act ("PSTCA"), 42 Pa. C.S. § 8541 *et seq.*, provides that "no local agency shall be liable for any damages on account of any injury to a person or property caused by any act of the local agency or an employee thereof or any other person" except as otherwise provided in the subchapter.  42 Pa. C.S. § 8541.  Section 8542 provides for exceptions to the governmental immunity.

> (a) Liability imposed.--A local agency shall be liable for damages on account of an injury to a person or property within the limits set forth in this subchapter if both of the following conditions are satisfied and the injury occurs as a result of one of the acts set forth in subsection (b):
>
> (1) The damages would be recoverable under common law or a statute creating a cause of action if the injury were caused by a person not having available a defensne under section 8541 (relating to governmental immunity generally) or section 8546 (relating to defense of official immunity); and
>
> (2) The injury was caused by the negligent acts of the local agency or an employee thereof acting within the scope of his office or duties with respect to one of the categories listed in subsection (b).  As used in this paragraph, "negligent acts" shall not include acts or conduct which constitutes a crime, actual fraud, actual malice or willful misconduct.

42 Pa. C.S. § 8542(a).  Subsection (b) provides for the following eight categories of exceptions: (1) vehicle liability; (2) care, custody or control of personal property; (3) real property; (4) trees, traffic control and street lighting; (5) utility service

facilities; (6) streets; (7) sidewalks; and (8) care, custody or control of animals.  42 Pa. C.S. § 8542(b).

"State and federal courts applying the PSTCA have repeatedly held that wrongful termination is a common law tort claim that does not fall within the exceptions to immunity laid out in § 8542." *Saleem v. School District of Philadelphia*, Civil Action No. 12-3193, 2013 WL 140613 (E.D. Pa. Jan. 11, 2013) (internal quotation omitted) (listing cases).

Based on a plain reading of the statute and relevant legal authority, we conclude Plaintiff's claim for wrongful termination is properly dismissed.  Therefore, Defendants' motion is granted as to Counts V and VI of the First Amended Complaint.

### III. Conclusion

For the reasons discussed above, Defendants Luzerne County and Robert Lawton's Motion to Dismiss (Doc. 15) is granted in part and denied in part.  The motion is granted only as to Plaintiff's Wrongful Termination claims in Counts V and VI in the First Amended Complaint.  All other claims in Plaintiff's First Amended Complaint go forward.  An appropriate Order is filed simultaneously with this Memorandum.

S/Richard P. Conaboy
RICHARD P. CONABOY
United States District Judge

DATED: February 3, 2014

17