```
              UNITED STATES DISTRICT COURT
           FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

LEONARD C. PIAZZA, III,        :
                               :
          Plaintiff,           :CIVIL ACTION NO. 3:13-CV-1755
                               :
          v.                   :(JUDGE CONABOY)
                               :
COUNTY OF LUZERNE, and         :
ROBERT LAWTON,                 :
                               :
          Defendant.           :
                               :
```

## **MEMORANDUM**

Here we consider Plaintiff's Motion for Discovery of Defendants' Attorney-Client Communications Based on Waiver of the Attorney-Client Privilege.  (Doc. 39.)  In the underlying action, Plaintiff claims he was unlawfully terminated from his position as Director of Elections in Luzerne County because of his lack of political affiliation with a particular candidate and political officials, parties and factions in power in Luzerne County.  (*See* Doc. 40 at 1.)  Defendants maintain that Plaintiff was not dismissed for partisan reasons.  (*Id.*)  At issue with the pending motion is whether Defendant Lawton waived the attorney-client privilege.  For the reasons discussed below, I conclude Plaintiff's motion is properly granted in part.

## **I. Background**

By way of general background, Defendants set out the following:

> In February, 2012, former County
> Controller, Walter Griffith ("Mr. Griffith"),

> publicly announced his intention to audit, *inter alia*, the County's Bureau of Elections. (*See* deposition transcript of Joanne Kelly attached to the County Defendants' Appendix of Exhibits in opposition to Plaintiff's motion ("the County Defendants' Appendix") as Exhibit "C" at Exhibit JK-1). Shortly thereafter, Plaintiff, the County's then Director of the Bureau of Elections, notified Mr. Griffith of Plaintiff's intention to examine Mr. Griffith's committee and campaign finance reports ("Mr. Griffith's campaign finance reports"). (See deposition transcript of Mr. Lawton attached to the County Defendants' Appendix at Exhibit "A" at Exhibit PRL-3). . . . Plaintiff's employment with the County was terminated on April 10, 2012. (*See* Plaintiff's amended complaint, Doc. No. 11, at ¶ 58).

(Doc. 41 at 1-2.)

This motion is based on the assertion of the attorney-client privilege during Defendant Lawton's deposition. When asked why he terminated Plaintiff's employment, Defendant Lawton responded "I did so on the advice of counsel." (Doc. 42-1 at 19.) He was then asked "Anything else?" and responded "That's all at this point." (*Id.*) Plaintiff's counsel then asked Defendant Lawton "What was that advice?" and Defendants' counsel objected. (*Id.*) After some discussion off the record, Defendants' counsel affirmed his objection and advised Defendant Lawton not to answer further questions, asserting the attorney-client privilege. (*Id.* at 20.) After further discussion on the record, Plaintiff's counsel and Defendants' counsel agreed to proceed with as much of the deposition as possible and afterward seek court intervention to

2

determine whether Defendant Lawton had waived the attorney-client privilege and whether he needed to answer the questions regarding his attorney's advice. (*Id.* at 21-23.)

Following this agreement, Plaintiff's counsel asked Defendant Lawton "were there any reasons that formed any part of the basis for your decision to terminate Mr. Piazza which were not advice from counsel?". Mr. Lawton responded as follows:

> I believed that Mr. Piazza exceeded the scope of authority of his office under statute. I believed that Mr. Piazza had exposed the county to significant potential liability. And I believed that Mr. Piazza did not apprehend the seriousness of those two matters and that he did not see any reason to conduct himself differently in the future.

(Doc. 42-1 at 23.) When asked if these beliefs were based on advice from counsel, Defendant Lawton was advised by his counsel not to answer. (*Id.* at 23-24.) When asked what the sources of information informed his belief that Plaintiff had exceeded his authority, Defendants' counsel again objected: "Object to form of the question to the extent that it includes attorney-client. You can answer it with that caveat." (Doc. 42-1 at 24.) Plaintiff responded:

> Okay. Based upon my conversations with the county's chief solicitor at the time, I believed that the county had been exposed to significant liability--financial liability. And that in undertaking the actions he did, Mr. Piazza exceeded the scope of his authority as county director of elections. Based upon Mr. Piazza's own conduct during the Loudermill hearing, I believe that he did

3

>           not apprehend the seriousness of those two
>           issues and that he would not refrain from the
>           same course of conduct in the future.

(Doc. 42-1 at 24-25.)

Defendants describe Defendant Lawton's response to the inquiry regarding the basis for his decision to terminate Plaintiff as follows:

>           Mr. Lawton testified, *inter alia*, that he
>           terminated Plaintiff's employment with the
>           County because –- upon advice of counsel –-
>           Plaintiff targeted Mr. Griffith in
>           retaliation for Mr. Griffith's intended audit
>           of the Bureau of Elections, exceeded
>           Plaintiff's authority and powers as the
>           County's Director of the Bureau of Elections
>           and exposed the County to a potential civil
>           rights action by Mr. Griffith.

(Doc. 41 at 2-3 (citing Exhibit "A" to the County Defendants' Appendix, p. 18, 1.1. 17-25, p. 19, 1.1. 1-25, p. 20, 1.1. 1-25, p. 21, 1.1. 1-25, p. 22, 13-25, p.23, 1.1. 1-25)[1].)

## II. Discussion

The only issue raised with the current motion is whether Defendant Lawton waived the attorney-client privilege when he asserted at his deposition that counsel's advice was the reason Plaintiff was terminated.  (Doc. 40 at 4.)

"The attorney-client privilege limits the normally broad disclosure requirements of Federal Rule of Civil Procedure 26, which provides that relevant but privileged matters are not

---

[1]   The Appendix was refiled as Document 42.

4

discoverable." *Sampson v. School District of Lancaster*, 262 F.R.D. 469, 473 (E.D. Pa. 2008) (citing Fed. R. Civ. P. 26(b)(1); *Martin Marietta Materials, Inc. v. Bedford Reinforced Plastics, Inc.*, 227 F.R.D. 382, 389 (W.D. Pa. 2005)).  In *Rhone-Poulenc Rorer Inc. v. The Home Identity Company*, 32 F.3d 851, 861 (3d Cir. 1994), the Third Circuit Court of Appeals set out the following "traditional elements of the attorney client privilege that identify communications that may be protected from disclosure in discovery":

> (1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made (a) is a member of the bar of a court, or his or her subordinate, and (b) in connection with this communication is acting as a lawyer; (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion of law or (ii) legal services or (iii) assistance in some legal proceeding, and (d) not for the purpose of committing a crime or tort; and (4) the privilege has been (a) claimed and (b) not waived by the client.

*Id.* (citing *In re Grand Jury Investigation*, 599 F.2d 1224, 1233 (3d Cir. 1979)).  "The privilege forbidding the discovery and admission of evidence relating to communications between attorney and client is intended to ensure that a client remains free from apprehension that consultations with a legal adviser will be disclosed."  *Id.* at 862 (citing *Hunt v. Blackburn*, 128 U.S. 464, 470 (1888); Wigmore, § 2290, at 543).  *Rhone-Poulenc* noted that because the privilege serves the interests of justice, it "is worthy of maximum legal

5

protection." 32 F.3d at 862. However, its limitation on discovery also requires that the privilege must be "'strictly confined within its narrowest possible limits consistent with the logic of its principle.'" *In re Grand Jury Investigation*, 599 F.2d at 1235 (quoting 8 Wigmore on Evidence § 2291, at 545 (1961)). The party asserting attorney-client privilege has the burden of proving that the privilege applies. *Matter of Grand Jury Empanelled February 14, 1978*, 603 F.2d 469, 474 (3d Cir. 1979) (citing *United States v. Lansdorf*, 591 F.2d 36, 38 (9th Cir. 1978)).

*Rhone-Poulenc* also extensively discussed waiver of the attorney-client privilege, first noting that "[t]here is authority for the proposition that a party can waive the attorney client privilege by asserting claims or defenses that put his or her attorney's advice in issue in the litigation." 32 F.3d at 863. Citing numerous cases where it was determined that the privilege was waived, *Rhone-Poulenc* identifies the common thread:

> the client has made the decision and taken
> the affirmative step in the litigation to
> place the advice of the attorney in issue.
> Courts have found that by placing the advice
> in issue, the client has opened to
> examination facts relating to the advice. . .
> .  The advice of counsel is placed in issue
> where the client asserts a claim or defense,
> and attempts to prove that claim or defense
> by disclosing or describing an attorney
> client communication.

32 F.3d at 863 (citing *North River Insurance Co. v. Philadelphia Reinsurance Corp.*, 797 F. Supp. 363, 370 (D.N.J. 1992); *Pittston*

6

*Co. v. Allianz Insurance Co.*, 143 F.R.D. 66, 71 (D.N.J. 1992)). Essentially, *Rhone-Poulenc* identifies a two-step inquiry into whether the privilege has been waived due to advice of counsel: "(1) the assertion of a claim or defense, and (2) an attempt to prove that claim or defense by disclosing or describing an attorney client communication." *Nesselrotte v. Allegheny Energy, Inc.*, Civ. A. No. 06-01390, 2008 WL 2858401, at *6 (July 22, 2008).

Plaintiff states that Defendants have asserted numerous defenses "similar to those asserted in *Nasselrote*" where the court found that they "may constitute assertion of a defense" under the first step of the *Rhone-Poulenc* analysis. (Doc. 40 at 6-7.) Plaintiff asserts that here Defendant Lawton clearly stated that he terminated Plaintiff's employment based on the advice of counsel, thus placing the advice of counsel at issue and waiving the attorney-client privilege. (*Id.*)

Defendants argue that they have not waived the privilege because their affirmative defenses are not based on advice of counsel. (Doc. 41 at 6.)

> While advice of counsel may have affected
> Defendants' decision to terminate Plaintiff's
> employment, Defendants have alleged and are
> in the process of establishing, *inter alia*,
> Defendants had a legitimate, non-retaliatory
> basis for terminating Plaintiff's employment
> with the County.  Contrary to Plaintiff's
> bald assertions, Defendants' answer,
> affirmative defenses, responses to
> Plaintiff's discovery requests and the
> deposition testimony of Mr. Lawton make it
> abundantly clear that Plaintiff was

7

> terminated because Plaintiff targeted Mr. Griffith in retaliation for Mr. Griffith's intended audit of the Bureau of Elections, exceeded Plaintiff's authority and powers as the County's Director of the Bureau of Elections and exposed the County to a potential civil rights action by Mr. Griffith.

(*Id.* at 6-7 (citing Doc. 27 *generally*; County Defendants' answers to Plaintiff's interrogatories attached to the County Defendants' Appendix as Exhibit "E", *generally*).) In arguing against waiver, Defendants point to authority which establishes that "'advice of counsel is not at issue merely because it is relevant, and does not necessarily become in issue merely because the attorney's advice might affect the client's state of mind in a relevant matter'" (Doc. 41 at 8 (quoting *Nesselrote*, 2008 WL 2858401, at *7 (citing *Fidelity and Deposit Co. of Maryland v. McCulloch*, 168 F.R.D. 516, 520 (E.D. Pa. 1996); *Rhone-Poulenc*, 32 F.3d at 863))), and the privilege "'is not waived by bringing or defending suit'" (*id.* (quoting *Nesselrote*, 2008 WL 2858401, at *7 (citing *Barr Marine Products Co., Inc. v. Borg-Wagner Corp.*, 84 F.R.D. 631, 635 (E.D. Pa. 1979)))).

Here Plaintiff does not assert that Defendants waived the attorney-client privilege merely because advice of counsel is relevant and might have affected the decision-maker's state of mind, nor does he assert that the privilege was waived by defending the suit. He alleges specifically and simply that the privilege was waived because Defendant Lawton testified that he terminated

8

Plaintiff on the advice of counsel and when asked "Anything else?" Defendant Lawton responded "That's all at this point." (Doc. 40 at 2.)

Defendants do not directly address Lawton's deposition testimony that he relied on advice of counsel. They recognize that the Third Circuit defines "'in issue' as requiring that the client attempt to prove the claim by 'disclosing or describing an attorney-client communication.'" (Doc. 41 at 8 n.2 (quoting *Rhone-Poulenc*, 32 F.3d at 863).) Here Defendant Lawton disclosed an attorney-client communication when he said he terminated Plaintiff on the advice of counsel and his testimony further established that he relied on the communication in his decision to terminate Plaintiff. (Doc. 42-1 at 19-25.) Defendant Lawton's statement was made in support of the assertion that he had the authority to terminate Plaintiff because Plaintiff had exceeded his authority. (*Id.*) The claimed propriety of Plaintiff's termination is a defense to Plaintiff's allegations that his termination violated federal and state law. (*See* Doc. 11.) Therefore the *Rhone-Polenc* factors are met regarding Defendant Lawton's communications with his attorney related to advice about Plaintiff's termination.

Defendants may now point to other bases for the termination decision but they have not met their burden of establishing that the attorney-client privilege applies to shield from discovery the communication relied on by Defendant Lawton which he testified

9

formed the basis of his termination decision.  Not only did he state that he initially had nothing to add to his statement that he terminated Plaintiff "on the advice of counsel" (Doc. 42-1 at 19), he later testified more specifically that he terminated Plaintiff based on his belief that Plaintiff had exceeded the scope of his authority under statute and this belief was based on his conversations with the county's acting chief solicitor (*id.* at 23, 24).  Thus, we are not persuaded by Defendant's argument that Defendant Lawton did not waive the attorney-client privilege.  Plaintiff's motion is properly granted regarding communications between Defendant Lawton and his counsel related to the reasons counsel advised him to terminate Plaintiff.

### **III. Conclusion**

For the reasons discussed above, Plaintiff's Motion for Discovery of Defendants' Attorney-Client Communications Based on Waiver of the Attorney-Client Privilege (Doc. 39) is granted to the extent the communications relied upon by Defendant Lawton in deciding to terminate Plaintiff are not shielded from discovery by the attorney-client privilege.  It is also granted to the extent the discovery deadline is extended for a period of sixty (60) days following the date of this Order.  (*See* Doc. 39 at 4.)  Plaintiff's motion is denied to the extent he seeks to be allowed to explore

all attorney client communications with any witness.[2]  (*See* Doc. 39 at 4.)  An appropriate Order is filed simultaneously with this Memorandum.

                                                    S/Richard P. Conaboy
                                                    RICHARD P. CONABOY
                                                    United States District Judge

DATED: October 30, 2015

---

[2] Plaintiff has presented no authority to broaden the scope of discovery beyond the communications between Defendant Lawton and counsel to which he testified at his deposition.

11